



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 08-cr-00295-WYD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.     PLATTE RIVER ASSOCIATES, INC.

     Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

     The United States, by Troy A. Eid, United States Attorney, through Robert E. Mydans, Assistant United States Attorney for the District of Colorado, and the defendant, Platte River Associates, Inc., personally and by counsel, Lee D. Foreman, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to paragraph 4 General Order 94-3.

## I. PLEA AGREEMENT

     The Defendant will plead guilty to a one count information that was filed in open court on July 15, 2008.   Count 1 of the Information charges a violation of Title 50, United States Code Appendix, Sections 5 and 16, (Trading With the Enemy Act) and 31 C.F.R. Part 515 (Cuban Assets Control Regulations).

1

The defendant agrees to waive any applicable Statute of Limitations as to Count 1 of the Information.  The Government agrees that in exchange for the described plea of guilty, no employee or agent of Platte River Associates, Inc. (PRA) will be prosecuted in connection with the described transaction.

The parties understand that the Federal Sentencing Guidelines must be considered by the Court.  They are advisory and are not mandatory.  The parties have not agreed upon the appropriate fine and each party is free to recommend to the sentencing court what the appropriate sentence/fine should be.

## II. MAXIMUM STATUTORY PENALTIES

The maximum statutory penalty for Count 1 of the Information is: a fine not more than $1,000,000.00, a $400.00 special assessment, and restitution if ordered by the Court

## III. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts which the parties believe are relevant for computing the appropriate guideline range.  To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to not be in dispute at the time of the plea.

The statement of facts herein does not preclude either party from presenting and

arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to sentencing in general.   Neither the court nor probation are precluded from the consideration of such facts.   In "determining the factual basis for the sentence, the court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information."

The parties agree that the government's evidence would show that the date on which conduct relevant to the offense (1B1.3) began is approximately October, 2000.

### Trading With the Enemy Act
### Cuban Transactions Regulations

On October 13, 1998, a Special Agent with U.S. Customs Service and a Special Agent with the Federal Bureau of Investigation visited PRA at the Boulder, Colorado office and put the president, vice-president and other senior management on notice that dealing, either directly or indirectly, with embargoed countries, including Cuba, is prohibited.  Those present indicated a clear understanding of the law.

On August 1, 2000, Repsol, a Spanish oil company purchased BasinMod 2d software from PRA.

In October, 2000, an employee of Repsol traveled to the PRA Boulder, Colorado offices for 4 ½ days of training on the use of BasinMod 2d.  The training commenced on October 23, 2000 and terminated on October 27, 2000.   The Repsol representative brought with him data to be used in creating a model for the exploration of oil and gas on a laptop computer along with the PRA BasinMod 2d software.  A PRA geologist was assigned to work with the Repsol employee.  That PRA geologist was familiar with certain identifying features unique to the Gulf of Mexico and Cuban waters.  The Repsol employee

- 3 -

told the PRA geologist that the data was for a Cuban project, thus confirming what the PRA geologist already suspected. During the course of the 4 ½ days of training, both the president and vice-president of PRA learned that the data being used for the training involved Cuban waters and that Repsol intended to use the software for an upcoming Cuban project. There was no attempt on the part of PRA to stop providing the training after learning this. In fact, by the end of the training the model was successfully created.

On October 25, 2000, during the training, a PRA employee sent an e-mail to a Repsol employee is Spain. The e-mail concerned the ongoing training and stated "Please find attached the BasinMod 2d Consulting quotation for the Offshore Cuban Project." Attached to the referenced e-mail was a Confidential Quotation from Platte River Associates to Repsol quoting a price for "BasinMod 2-D Consulting for Offshore Cuban Project."

Repsol was billed for 4 ½ days of consulting by PRA at a daily rate of $1000.00 for a total of $4500.00.

As the employee of Repsol was leaving the United States in late October, 2000, Customs seized the laptop computer. An analysis of the laptop revealed materials related to a potential Cuban project as described above.

The parties to this agreement jointly submitted relevant materials associated with this violation to the Office of Foreign Asset Control (OFAC), Department of the Treasury, in Washington, D.C. OFAC oversees matters involving criminal and civil violations of the Trading With the Enemy Act. After review of the submitted materials, OFAC advised that there is prima facie evidence of a criminal violation of Title 50, United States Code Appendix, Sections 5 and 16, (Trading With the Enemy Act) and 31 C.F.R. Part 515

(Cuban Assets Control Regulations) as it relates to the facts contained in this plea agreement.

## IV. **SENTENCING COMPUTATION**

The parties understand that the court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties.

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are not in dispute. (§6B1.4(b)) New facts which arise or are discovered may cause a party to change its position with regard to guideline computation or sentencing position.

The following calculations are made to advise the defendant of what is believed to be the most severe possible sentence under the sentencing guidelines.

Pursuant to 1B1.11(a), the court shall use the Guidelines Manual in effect on the date that the defendant is sentenced. Pursuant to 1B1.11(b)(2), the Guidelines Manual in effect on a particular date shall be applied in its entirety. As a result, the Guidelines Manual dated November 1, 2007 will be used.

Since corporations can only be fined, the fine is determined pursuant to 8C1.1 et seq. of the guidelines. As noted earlier in the plea agreement, the maximum possible fine that can be accessed against a corporation for this violation is not more than $1,000,000.00.

Pursuant to 8C2.10, the appropriate fine for Count 1 should be determined by applying the provisions of Title 18, United States Code, Sections 3553 and 3572, because there is not an applicable guideline reference for a violation of Title 50, United States Code

Appendix, Section 5 and 16(a) or guideline 2M5.1.

## V. <u>WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE</u>

Pursuant to the General Order 1994-3, the parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct is disclosed and the sentencing guidelines takes into account all pertinent sentencing factors with respect to this defendant.

Date 10/3/08

Platte River Associates
DEFENDANT

Date 10/3/08

Lee D. Foreman
ATTORNEY FOR DEFENDANT

Date 10/2/08

Robert E. Mydans
ASSISTANT U.S. ATTORNEY

- 6 -